**David H. Griggs, OSB No. 982436**
e-mail: david@griggslawpc.com
GRIGGS LAW GROUP P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005
Telephone:  (971) 228-8110
Fax:  (971) 327-6735

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MATTHEW THOMPSON**,<br><br>                    Plaintiff,<br><br>          v.<br><br>**KC CARE, LLC**,<br><br>                    Defendant. | Case No.   3:18-cv-00363<br><br>**COMPLAINT**<br><br>(29 U.S.C. § 216 – Fair Labor Standards Act)<br><br>**JURY TRIAL REQUESTED** |

**INTRODUCTION**

Plaintiff Matthew Thompson worked for Defendant KC Care, LLC for several years as a resident manager. This job entailed three 24-hour shifts in a row, followed by three days off. Plaintiff slept on the premises during these shifts, but was often woken up to help with a resident. These interruptions could take up half the night. While on shift, he was not allowed to leave except to attend to business of the residents—he had no freedom to pursue personal endeavors.

Defendant did not pay Plaintiff for his overtime hours. Instead, Defendant attempted to evade liability by incorrectly classifying Plaintiff as exempt.

## NATURE OF THE ACTION

1.

This is an action with claims under 29 U.S.C. § 216 to vindicate Plaintiff's rights under the Fair Labor Standards Act.

## JURISDICTION AND VENUE

2.

This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3.

All facts alleged herein took place in Oregon, therefore venue is proper pursuant to 28 U.S.C. § 1391.

4.

Defendant has its principal place of business in Clatsop County, Oregon, and the material events occurred in Clatsop County. Accordingly, this Court has personal jurisdiction over Defendant.

## PARTIES

5.

Plaintiff Matthew Thompson ("Plaintiff") is an individual and resident of Oregon. She was employed with Defendant KC Care, LLC at all material times.

6.

Defendant KC Care, LLC ("Defendant") is a business incorporated in the State of Oregon. Defendant is located in Seaside, Clatsop County, Oregon.

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005

## BACKGROUND

7.

Kenneth Biamont is the owner of Defendant. Lacey Biamont is the manager of Defendant.

8.

Plaintiff was Defendant's employee starting in July 2014 until July 14, 2015, and then again from March 1, 2016, until October 22, 2017.

9.

Plaintiff began as an hourly employee of Defendant. Starting in early 2015, Plaintiff became a salaried employee and began working 24-hour shifts.

10.

Once Plaintiff began working 24-hour shifts, he moved into one of Defendant's houses at a reduced rent. Plaintiff moved out of the house on June 6, 2015.

11.

Once Plaintiff was working 24-hour shifts, he earned approximately $36,000.00 per year while working for Defendant. Defendant paid Plaintiff these wages as a salary.

12.

Defendant titled Plaintiff's position as either a resident manager or shift manager, based solely on the fact that Plaintiff worked 24-hour shifts.

13.

Defendant's business was running adult care homes for developmentally delayed and disabled adults. This entailed operating several homes where the clients lived and having employees remain in the home at all times to be ready to respond to issues and call attention to management.

/ / /

/ / /

14.

Plaintiff often worked three 24-hour shifts in a row. These shifts involved him remaining in the house to address issues with the developmentally delayed adults that lived in the house. Plaintiff was allowed to sleep, but he had to remain ready and able to address any issue immediately, which at times requires him to wake up in the middle of the night to address the issue. Plaintiff had a resident wake him as often as every other night, averaging 35% of Plaintiff's nights. These interruptions could be short, but could also last several hours. As such, Plaintiff was on the job working for the full 24-hour shift.

15.

Plaintiff's schedule, from start until approximately November 2016 was three 24-hour shifts in a row, then three days off. This three on and three off schedule occurred in the vast majority of weeks from Plaintiff's start until approximately November 2016.

16.

From November 2016 until the end of Plaintiff's employment, she worked a two 24-hour period on, two off, three on, two off, two on, three off schedule. One weekend a month Plaintiff received an extra day off. This schedule resulting in many weeks where Plaintiff worked 120 hours.

17.

Plaintiff and Defendant had no formal agreement regarding scheduled sleep time. Defendant expected Plaintiff to be able and ready to respond to any resident issue, whether at 10:00 p.m. or 3:00 a.m. When one of Defendant's employees question Defendant about getting overtime for a sleeping time interruption of more than four hours, Defendant's owner Kenneth Biamont responded that the employee's house was not budgeted for overtime.

18.

Defendant had an explicit rule that employees were not to run personal errands while on shift. Employees, such as Plaintiff, had no freedom to live or pursue their own interests. When Plaintiff first did attempt to run a personal errand, Defendant found out. Defendant called

Plaintiff immediately and chewed him out, making the sure Plaintiff understood the explicit rule that he was not to do personal errands.

19.

Plaintiff spent most of her time in the house as the only employee. During the workweek, during the day, there would be another employee there. Plaintiff did not hire this other employee, nor did Plaintiff supervise this employee. When a new employee was brought in, Kenneth or Lacey Biamont would go over their job as training. Plaintiff did not train employees, nor did Plaintiff have any control of the wages or hours of these other employees. Similarly, Plaintiff did not have the ability to discipline these employees.

20.

In December 2016, Plaintiff complained to management about a resident that was making unwelcome comments and advances toward her. This resident was a registered sex offender, and Plaintiff was concerned for her safety. Defendant moved the resident out of Franklin House—the house in which Plaintiff worked—and into a different house.

21.

While at the other house, the sex offender resident assaulted one of Defendant's employees. Defendant allowed the resident to remain because he was one of the higher paying clients.

22.

In September 2017, there was a report of abuse of residents against another one of Defendant's employees. Plaintiff cooperated in the investigation fully. The investigator substantiated the allegation against the other employee.

23.

Following Plaintiff's cooperation, Kenneth and Lacey Biamont stopped communicating with Plaintiff. Since Kenneth and Lacey Biamont were Defendant's management, Defendant effectively stopped communicating with Plaintiff. This lack of communication included delayed paychecks.

24.

In addition to stopping communications with Plaintiff, Defendant began the process of moving the sex offender resident back into Franklin house with Plaintiff.

25.

Eventually, Defendant moved the sex offender resident back into Franklin house with Plaintiff. Plaintiff feared for her safety and life, and did not feel safe coming into work.

26.

Defendant's retaliatory actions required Plaintiff to quit.

27.

While employed by Defendant, Plaintiff's work was carrying out the routine tasks of the business—remaining in the care homes in order to keep the residents cared for and safe. Plaintiff did not manage KC Care or any of its departments—she did not direct departments, employees, make management decisions, or consider any of the budgeting, for example.

28.

Plaintiff effectively had no discretion or independent judgment in matters at her work. She was required to check in with company management for any decision beyond very basic decisions, such as picking up small items at the grocery store.

29.

Plaintiff lived in an apartment that was part of the physical structure of the house in which she worked. However, the apartment was separated internally from the resident's house. Defendant charged Plaintiff rent to live in this apartment. The apartment was such that Defendant could have rented it out to a member of the community.

30.

Defendant defined its workweek as starting on Monday at 12:01 a.m. and continuing until Sunday at midnight.

31.

While employed with Defendant, Plaintiff routinely worked in excess of 80 hours a week.

GRIGGS LAW GROUP, P.C.
4900 SW Griffith Dr., Ste. 165
Beaverton, OR 97005

32.

On information and belief, Defendant had gross revenues in excess of $500,000 annually.

33.

Despite Defendant's attempted classification, Plaintiff was not exempt from the federal and state overtime laws. Consequently, Defendant owes Plaintiff unpaid overtime wages.

## **CLAIM FOR RELIEF**

**(Violations of the Fair Labor Standards Act – 29 U.S.C. § 216.)**

34.

Plaintiff realleges paragraphs 1 through 33 as if set forth fully herein.

35.

Pursuant to 29 U.S.C. § 207, Defendant was required to pay Plaintiff overtime wages of at least one and half times her base wage for all time worked over forty (40) hours in any given work week.

36.

Defendant failed to pay Plaintiff her overtime wages.

37.

Defendant intentionally attempted to classify Plaintiff as non-exempt in order to avoid paying overtime.

38.

Defendant owes Plaintiff approximately $92,734.62 in overtime wages.

39.

Defendant's failure to pay Plaintiff was willful.

40.

Pursuant to 29 U.S.C. § 216, Defendant owes Plaintiff liquidated damages, in an amount to be proven at trial, but estimated at approximately $92,734.62 in liquidated damages.

/ / /

/ / /

41.

Pursuant to 29 U.S.C. § 216, Plaintiff is entitled to recover reasonable attorney fees, costs, and disbursements.

42.

Pursuant to 28 U.S.C. § 1961, Plaintiff is entitled to post-judgment interest in the amount dictated in the statute.

## JURY DEMAND

43.

Pursuant to the FLSA, Plaintiff demands a jury trial on his claim.

WHEREFORE, Plaintiff prays for the relief as set forth in this Complaint, together with such other relief that the Court finds just and equitable.

DATED this 28th day of February, 2018.

GRIGGS LAW GROUP PC

/s/David H. Griggs
David Griggs, OSB No. 98243
Griggs Law Group PC
4900 SW Griffith Dr. Ste. 165
Beaverton, Oregon 97005
Telephone: (971) 228 – 8110
Fax: (971) 327-6735
E-mail: david@griggslawpc.com
Attorney for Plaintiff